UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        vs.<br><br>WESTERLY SEID,<br><br>                    Defendant. | CR. 21-50101-JLV<br><br>ORDER |

## INTRODUCTION

Pending before the court is defendant's motion to suppress. (Docket 25). The United States opposes defendant's motion. (Docket 32).   Defendant's motion was referred to Magistrate Judge Veronica L. Duffy for a report and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B).   An evidentiary hearing was held.   (Dockets 38 & 40).   Magistrate Judge Duffy issued a report and recommendations ("R&R").   (Docket 41).   The magistrate judge recommended the defendant's motion to suppress be denied.   Id. at p. 20.   Defendant timely filed objections to the R&R.   (Docket 44).   For the reasons stated below, defendant's objections are overruled and the R&R is adopted consistent with this order.

## DEFENDANT'S OBJECTION

The defendant's objections to the R&R are summarized as follows:

1.    Reasonable suspicion dissipated by the time the officer made contact with the occupants of the vehicle; and

    2.    The officer prolonged the stop in violation of the Fourth
Amendment.

(Docket 44).

## ANALYSIS

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files
written objections to the magistrate judge's proposed findings and
recommendations, the district court is required to "make a de novo
determination of those portions of the report or specified proposed findings or
recommendations to which objection is made." Id.   The court may "accept,
reject, or modify, in whole or in part, the findings or recommendations made by
the magistrate judge." Id.; see also Fed. R. Crim. P. 59(b)(3).   The court
completed a *de novo* review of those portions of the R&R to which objections were
filed.

The court completed a *de novo* review of the transcript of the suppression
hearing and the two exhibits admitted at the hearing.   Defendant did not object
to the magistrate judge's statement of the facts developed during the suppression
hearing.   (Docket 44 at p. 1).   Unless otherwise indicated, the court's findings
of fact are consistent with the findings made by the magistrate judge.

    1.    REASONABLE SUSPICION DISSIPATED BY THE TIME THE
OFFICER MADE CONTACT WITH THE OCCUPANTS OF THE
VEHICLE

The magistrate judge found "under the totality of the circumstances, at the
time Officer Jackson initiated the stop, he had reasonable suspicion for the stop.
He testified—and nothing undermines this testimony—that he could not see any

tags on the car at all." (Docket 41 at p. 11). Defendant does not challenge this finding. (Docket 44 at p. 2).

Defendant's first objection contends the magistrate judge erred because Officer Jackson's reasonable suspicion dissipated once he walked up to the vehicle and saw the vehicle had "legitimate dealer tags." Id. (referencing Docket 40 at p. 22:19-20). At that point, defendant argues Officer Jackson had no further authority to approach the vehicle. Id. at p. 4. "Even if reasonable suspicion permits Officer Jackson to inspect the plates," defendant submits "the mission of the traffic stop is complete before he approaches the occupants [of the vehicle]." Id. Defendant contends there was "no evidence Officer Jackson suspected the tags as fraudulent." Id.

Defendant takes the officer's statement out of context. Officer Jackson's exchange with defense counsel actually developed the following testimony.

| Attorney: | By the time you get out of your vehicle and you're on foot next to the vehicle . . . then you again confirm [sic] that these are dealer plates? |
|---|---|
| Officer: | Once I got up close to the vehicle, yes. |
| Attorney: | So you're within a few feet of these dealer plates? |
| Officer: | Yes. |
| Attorney: | You're able to confirm nothing looks suspicious? |
| Officer: | Without reading them, just looking at them they appeared to be legitimate dealer tags. |
| Attorney: | You testified earlier, I believe, that you frequently see counterfeit tags; is that fair? |

3

Officer:       During my time with the police department I have seen a fair share of counterfeit dealer tags.

. . .

Attorney:      And so if this happens with some frequency then what's your procedure?

Officer:       We would take them and depending on the situation, we could tow the vehicle, we would obviously remove those license plates and they would probably -- that dealer tag, they would be placed in evidence, they could be cited for it.

Attorney:      I guess my question is, you'll know on appearance whether this is a valid dealer tag or not or is there some other procedure to verify?

Officer:       I would have to pretty thoroughly examine it because a lot of the times they'll use white out or they'll use other means for making them fictitious that are hard to tell from just a glance. You have to actually really look at them.

(Docket 40 at pp. 22:9-24 & 23:6-18).

The officer's testimony is consistent with his testimony on direct

examination:

Attorney:      As you approach this vehicle, what observations are you able to make?

Officer:       I'm able to at that point see that it is a dealer tag in the window.

Attorney:      So let me ask you, once you see the dealer tag in the window, are you able to tell whether it's valid or not?

Officer:       No.

Attorney:      At what point are you able to tell or determine that tag is valid?

Officer:      I think just after getting right up on it and looking at it.

Id. at p. 13:16-25.

The magistrate judge found the caselaw of the United States Court of
Appeals for the Eighth Circuit did not support defendant's Fourth Amendment
argument.   (Docket 41 at p. 11).   Mr. Seid contends the officer was required "to
tell the driver he had mistakenly stopped the vehicle and to wish the occupants
. . . a good night and send them on their way without further inquiry."   Id.

Defendant's objection is misplaced.   "Without an opportunity to inspect
the [rear window tag] more closely, [Officer Jackson] could not eliminate the
possibility that the [vehicle] did actually display valid proof of [ ] registration."
United States v. Givens, 763 F.3d 987, 991 (8th Cir. 2014) (citing United States
v. Sanchez, 572 F.3d 475, 479 (8th Cir. 2009)).   "An officer's 'incomplete initial
observations may give reasonable suspicion for a traffic stop,' even if subsequent
examination reveals no traffic law violation."   United States v. Foster, 15 F.4th
874, 877 (8th Cir. 2021) (citing United States v. Hollins, 685 F.3d 703, 706 (8th
Cir. 2012)).

The fact Officer Jackson concluded the rear window tag was legitimate
does not modify the original basis for the officer's reasonable suspicion of
criminal misconduct.   His mistake of fact was "objectively reasonable" and
justified the stop of the vehicle in which Mr. Seid was a passenger.   Foster,
15 F.4th at 877.   Officer Jackson "had an objectively reasonable basis justifying
the stop of the vehicle."   Givens, 763 F.3d 991.   See also Foster, 15 F.4th at 878

5

("While his initial observation turned out to be mistaken, Officer Johnson's mistake of fact was an objectively reasonable one, and thus Foster was not unreasonably seized when Officer Johnson conducted the traffic stop.").

Defendant's first objection is overruled.

2.    THE OFFICER PROLONGED THE STOP IN VIOLATION OF
       THE FOURTH AMENDMENT

Mr. Seid contends the magistrate judge erred by extending the traffic stop beyond the limits of the Fourth Amendment.   (Docket 44 at p. 4).   Defendant submits Officer Jackson had no right to ask Mr. Seid, as a passenger in the vehicle, for his name or birthdate.   Id. at p. 6.   Defendant acknowledges it was following the officer's request for the passenger's name that Mr. Seid provided a false name.   Id.

"[F]ollowing a justifiable traffic stop" an officer is entitled to "ask[] for the driver's license and registration."   Hollins, 685 F.3d at 706-707.   See also United States v. Allegree, 175 F.3d 648 (8th Cir. 1999) (determining the traffic stop based on mistaken belief that a car was unlawfully displaying emergency blue lights was sufficient to allow license and registration check); United States v. Collier, 419 F. App'x 682, 684 (8th Cir. 2011) (although traffic stop was initiated because registered owner had an outstanding warrant and when officer discovered she was not present, officer continued to have the authority to check the driver's license and registration).

Officer Jackson was also entitled to ask for Mr. Seid's identification. Foster, 15 F.4th at 878 ("Officer Johnson did not unlawfully expand the scope or

extend the stop when he asked for identification from the occupants of the vehicle.") (referenced citations omitted).   When Mr. Seid gave a false name, Ambrose, Officer Jackson was permitted to return to the vehicle to clear up the issue.   Id.   It was during this encounter that the officer shined his flashlight into the passenger's area of the front seat.   It is obvious from watching the officer's body camera he was trying to assist the passenger, who was rummaging through papers in his lap, in finding either his identification card or driver's license.   (Docket 40 at p. 12-16; Exhibit 2 at 28:33:45-35:10).[1]   Officer Jackson's "action in shining his flashlight to illuminate the interior of . . . [the] car trenched upon no right secured to [Mr. Seid] by the Fourth Amendment." United States v. Evans, 830 F.3d 761, 767 (8th Cir. 2016) (citing Texas v. Brown, 460 U.S. 730, 739-40 (1983); other citations omitted).

It was during this period of time that Officer Jackson observed a green bandana wrapped around an object on the floor of the passenger's area. (Docket 40 at p. 19:19-22; Exhibit 2 at 28:34:50-35:10).   Officer Jackson saw a shiny object which Mr. Seid was attempting to hide from the officer.   Id. at 28:33:35:10 ("now you're hiding it").   The officer observed the object to be "a meth pipe underneath [Mr. Seid's] left leg."   (Docket 40 at p. 19:19-22).

With a false name, evasive action by Mr. Seid and the presence of a methamphetamine pipe, Officer Jackson was entitled to extend the period of the

---

[1]The court references the 24-hour clock time in the upper right-hand area of the officer's body camera video.

stop to investigate the issues further.   Horton v. California, 496 U.S. 128, 135

(1990).   The court adopts the magistrate judge's conclusion that

> [T]he plain view exception to the warrant requirement applies
> whenever officers "are lawfully in a position from which they view the
> object, the incriminating character of the object is immediately
> apparent, and the officers have a lawful right of access to the object."

(Docket 41 at p. 19) (citing Evans, 830 F.3d at 766 (internal citations omitted).

From the time of the initial stop until Officer Jackson observed a shiny

object which he saw as a methamphetamine pipe was only six minutes.   (Exhibit

2 at 28:29:01-35:10).   To extend a stop, a " 'police officer must be able to point to

specific and articulable facts which, taken together with rational inferences from

those facts reasonably warrant' further investigation."   United States v. Woods,

829 F.3d 675, 679 (8th Cir. 2016) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)).

Under the totality of the circumstances, this period of time did not violate Mr.

Seid's Fourth Amendment rights.

Defendant's second objection is overruled.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's objections (Docket 44) are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket

41) is adopted consistent with this order.

IT IS FURTHER ORDERED that defendant's motion to suppress (Docket

25) is denied.

IT IS FURTHER ORDERED that a scheduling order will be filed.

Dated February 14, 2022.

BY THE COURT:

/s/ Jeffrey L. Viken

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE